IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

NICOLE CHERNYAKHOVSKY,

    Plaintiff,

v.

HTH MGMT, LLC, a Delaware limited liability company,
BKB QUEENSBRIDGE, LLC, a New York limited liability company,
LANCE PINN, individually, and
BRANDON GONSALVES, individually.

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff, Nicole Chernyakhovsky, through her undersigned counsel from HKM Employment Attorneys, LLP and pursuant to the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA") and Colorado common law, as her Complaint and Jury Demand against Defendants, HTH MGMT, LLC ("HTH"), BKB Queensbridge, LLC ("BKB Queensbridge"), Lance Pinn ("Mr. Pinn"), and Brandon Gonsalves ("Mr. Gonsalves") (all entities and individuals collectively referred to herein as "Defendants") states as follows:

### NATURE OF THE CASE

BKB Queensbridge is a rock-climbing gym located in New York, New York. Mr. Pinn owns and operates BKB Queensbridge. Ms. Chernyakhovsky began consulting for BKB Queensbridge in November 2022. Defendant BKB Queensbridge repeatedly breached its contract with Ms. Chernyakhovsky by failing to pay her consulting fees. Defendant BKB Queensbridge

1

owes Ms. Chernyakhovsky approximately $41,566.50 plus accrued interest under the parties' contract and interest under Colorado state law.

In April 2023, Mr. Pinn and Mr. Gonsalves hired Ms. Chernyakhovsky as the Chief Executive Officer of their company HTH MGMT, LLC ("HTH"). Mr. Pinn and Mr. Gonsalves exercised control over Ms. Chernyakhovsky's employment.

Defendants HTH, Mr. Pinn, and Mr. Gonsalves committed wage theft by failing to pay Ms. Chernyakhovsky her wages after multiple written wage demands. Defendants HTH, Mr. Pinn, and Mr. Gonsalves owe Ms. Cheryakhovsky $94,230.78 plus interest and penalties under Colorado wage law.

Ms. Chernyakhovsky sent Defendants HTH, Mr. Pinn, and Mr. Gonsalves a written demand for the payment of wages on February 27, 2025, and April 15, 2025. Defendants have willfully failed to pay Ms. Chernyakhovsky's owed wages. Defendants HTH, Mr. Pinn, and Mr. Gonsalves violated the Colorado Wage Act by failing to pay Ms. Chernyakhovsky wages that she earned during her employment. *See* C.R.S. § 8-4-103(1)(a); *see also Nieto v. Clark's Market*, 2021 CO 48 ¶¶ 10-24 (holding that employer could not require forfeiture of earned wages based on termination of employment). Defendants further violated the CWA, and became liable for statutory penalties under C.R.S. § 8-4-109(3)(b), by failing to tender Ms. Chernyakhovsky's wages within 14 days of receiving a written demand seeking immediate payment. Defendants knew or, through the exercise of reasonable diligence should have known, that the CWA required them to pay wages earned by their employees. *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (willfulness inquiry "focuses on an employer's diligence in the face of a statutory obligation"). As such, Defendants' violations of the CWA were and are willful as a matter of law.

2

Ms. Chernyakhovsky seeks her unpaid wages/compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II) due to the willful nature of Defendants' violations, interest on unpaid wages at a rate of 12% per annum, and Ms. Chernyakhovsky's reasonable attorney's fees and the costs incurred in obtaining her unpaid wages/compensation. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110(1)(b). Ms. Chernyakhovsky also seeks her unpaid invoice payments plus contractual interest and interest under Colorado law for her work performed as an independent contractor.

## **PARTIES**

1. Ms. Chernyakhovsky is a Colorado citizen who is domiciled at 10510 West 74th Place, Arvada, Colorado 80005.

2. Ms. Chernyakhovsky agreed to perform consulting services through her Colorado limited liability company, LevelUp Consulting LLC, with BKB Queensbridge, from November 2022 until April 2023. This agreement was memorialized in a written contract.

3. Ms. Chernyakhovsky became an "employee" entitled to the protections of the CWA in April 2023 and thereafter until February 2024. *See* C.R.S. § 8-4-101(5).

4. Defendant HTH MGMT LLC is a Delaware limited liability company with its Registered Agent listed at 1221 College Park Dr., Suite 116, Dover, DE 19904.

5. Defendant BKB Queensbridge, LLC is a New York limited liability company with its Registered Agent listed at 33 Harvest Ln., West Hartford, CT 06117.

6. In April 2023 and thereafter until February 2024, HTH, Mr. Pinn, and Mr. Gonsalves were an "employer" as defined by the CWA. *See* C.R.S. § 8-4-101(6) because they both exercised control over Ms. Chernyakhovsky's employment.

3

7. Lance Pinn is an individual who, upon information and belief, lives at 154 W. 2nd St., Unit 108, Boston, MA 02127.

8. Mr. Pinn is a citizen of Massachusetts.

9. Mr. Pinn is part owner and operator of BKB Queensbridge.

10. Brandon Gonsalves is an individual who, upon information and belief, lives at 15142 S. Amber Crest Ln., Draper UT 84020.

11. Mr. Gonsalves is a citizen of Utah.

12. In April 2023 and thereafter until February 2024, Messrs. Pinn and Gonsalves became "employers" as defined by the CWA. *See* C.R.S. § 8-4-101(6) (incorporating definition of "employer" from the Fair Labor Standards Act ("FLSA")). Messrs. Pinn and Gonsalves: (1) had the power to hire and fire employees; (2) exercised operational control over employees' work; (3) determined wage rates and methods of payment; and (4) retained employment records. *See Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1167 (D. Colo. 2019) (discussing individual liability under the FLSA).

13. BKB Queensbridge is a rock-climbing gym located in New York, New York founded by Mr. Pinn.

14. HTH is a rock-climbing gym management company founded by Mr. Pinn and Mr. Gonsalves.

**JURISDICTION AND VENUE**

15. Ms. Chernyakhovsky hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a) because there exists complete diversity between Ms. Chernyakhovsky and Defendants and the amount in controversy exceeds $75,000.00.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Ms. Chernyakhovsky worked for Defendants in Colorado, and thus the events giving rise to her wage claims occurred in this District.

## FACTUAL ALLEGATIONS

18. Ms. Chernyakhovsky hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

19. On or around November 4, 2022, Ms. Chernyakhovsky entered into a contract with BKB Queensbridge to provide consulting services ("the Consulting Contract").

20. The Consulting Contract provided that "[a]ny amounts owed by Client to LevelUp under this Agreement shall accrue interest at a rate of 1.5% per week beginning thirty (30) days after such amounts become due and owing."

21. Ms. Chernyakhovsky performed her duties under the Consulting Contract.

22. However, beginning in or around February 2023, BKB Queensbridge failed to fully pay Ms. Chernyakhovsky's invoices.

23. On or about February 20, 2023, Ms. Chernyakhovsky submitted an invoice for $28,329.50, covering her work from December 22, 2022, until February 14, 2023.

24. BKB Queensbridge made a partial payment of $4,000 toward the outstanding February 2023 invoice on or about March 21, 2023.

25. Later, BKB Queensbridge made the following payments toward this invoice: $6,000 (January 2024), $6,000 (March 2024), $2,000 (September 2024), $2,000 (November 2024),

5

$2,000 (December 2024), $500 (January 2025), and $500 (February 2025) amounting to $23,000 toward this invoice.

26. BKB Queensbridge still owe $5,329.50 plus interest on the February 2023 invoice.

27. On or about March 23, 2023, Ms. Chernyakhovsky submitted an invoice for $45,442.50, which accounted for the unpaid portion of the previous invoice ($24,329.50) and for work performed from February 20, 2023 to March 22, 2023 ($21,113.00).

28. BKB Queensbridge failed to pay the March 2023 invoice.

29. On or about April 14, 2023, Ms. Chernyakhovsky submitted an invoice for $60,567.00, which included the outstanding balance ($45,442.50) and the work performed from March 23, 2023 to April 14, 2023 ($15,124.00).

30. BKB Queensbridge failed to pay the April 2023 invoice.

31. To date, BKB Queensbridge owes Ms. Chernyakhovsky $41,566.50 plus interest for her consulting services.

32. Despite BKB Queensbridge and Mr. Pinn's consistent failure to pay Ms. Chernyakhovsky's invoices, Ms. Chernyakhovsky gave BKB Queensbridge the benefit of the doubt. Mr. Pinn and Mr. Gonsalves asked Ms. Chernyakhovsky to be the CEO of their company, HTH MGMT, LLC. HTH is a consulting company that helps open and run rock-climbing gyms around the country.

33. HTH assumed the management of the BKB Queensbridge.

34. Mr. Pinn and Mr. Gonsalves hired Ms. Chernyakhovsky as the Chief Executive Officer of HTH.

35. On or around April 18, 2023, Ms. Chernyakhovsky and HTH signed an offer letter for her position at HTH ("Employment Agreement").

36. The offer letter included the following provisions:

　　i. A signing bonus of $75,000, to be paid in monthly installments of $10,000 and the remainder to be paid in bulk upon HTH receiving full funding.

　　ii. HTH would pay Ms. Chernyakhovsky's invoices in full upon signing and by April 28, 2023.

　　iii. $175,000 annual salary.

37. HTH was comprised of Ms. Chernyakhovsky (Chief Executive Officer), Mr. Pinn (Chief Growth Officer), and Mr. Gonsalves (Chief Creative Officer).

38. Mr. Pinn and Mr. Gonsalves controlled Ms. Chernyakhovsky's employment by determining her pay, how she was paid, hiring her and being able to fire her and directing Ms. Chernyakhovsky's day-to-day tasks to achieve HTH's strategic vision.

39. Mr. Pinn and Mr. Gonsalves also maintained Ms. Chernyakhovsky's employment records.

40. BKB Queensbridge failed to pay Ms. Chernyakhovsky her outstanding invoice payments by April 28, 2023, pursuant to the contract.

41. HTH, Mr. Pinn, and Mr. Gonsalves paid Ms. Chernyakhovsky her monthly salary of $13,461.54 in May 2024, June 2024, and July 2024.

42. However, starting in August, HTH, Mr. Pinn, and Mr. Gonsalves stopped paying Ms. Chernyakhovsky her monthly salary.

43. HTH, Mr. Pinn, and Mr. Gonsalves never paid Ms. Chernyakhovsky her signing

bonus of $75,000.

44. To date, HTH, Mr. Pinn, and Mr. Gonsalves have not paid, or made any unconditional offer to pay, the wages owed to Ms. Chernyakhovsky.

45. On or around February 21, 2024, Ms. Chernyakhovsky resigned from HTH due to HTH's, Mr. Pinn's, and Mr. Gonsalves' consistent failure to pay her wages.

46. HTH, Mr. Pinn, and Mr. Gonsalves failed to pay Ms. Chernyakhovsky approximately $94,230.78 in wages.

47. Ms. Chernyakhovsky requested her invoice payments and wages in writing multiple times over the course of her time with Defendants.

48. On or about February 27, 2025, Ms. Chernyakhovsky sent Defendants a written demand for the payment of wages for the outstanding invoice payments and her wages.

49. BKB Queensbridge failed to pay Ms. Chernyakhovsky's outstanding invoice payments which total $41,566.50 plus interest.

50. HTH, Mr. Pinn, and Mr. Gonsalves failed to tender Ms. Chernyakhovsky's wages within 14 days of Ms. Chernyakhovsky's demand.

51. On or about April 15, 2025, Ms. Chernyakhovsky sent a written demand for the payment of wages for her outstanding signing bonus of $75,000 to HTH, Mr. Pinn, and Mr. Gonsalves.

52. HTH, Mr. Pinn, and Mr. Gonsalves failed to tender Ms. Chernyakhovsky's wages, i.e., her signing bonus, within 14 days of Ms. Chernyakhovsky's demand.

53. At all times relevant to this Complaint, Defendants knew or, through the exercise of any reasonable amount of diligence should have known, that they were required to pay Ms.

8

Chernyakhovsky's wages/compensation. As such, the Defendants' violations of the CWA were and are willful.

**FIRST CLAIM FOR RELIEF**
**WAGE THEFT IN VIOLATION OF THE COLORADO WAGE ACT**
**C.R.S. § 8-4-101 *et seq.***
**7 C.C.R. 1103-1**
**Against HTH, Mr. Pinn, and Mr. Gonsalves**

54. Ms. Chernyakhovsky hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

55. The CWA requires employers to pay all "wages" and "compensation" earned by employees in a timely manner. C.R.S. § 8-4-103(1)(a).

56. The CWA defines "wages" and/or "compensation" to include: "(I) All amounts for labor or service performed by employees [that are] earned, vested, and determinable;" "(II) Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement…"." C.R.S. § 8-4-101(14)(a).

57. A bonus is wages/compensation that must be paid to an employee under the CWA if/when it is: (A) "earned," meaning that the employee performed the work they had to perform; (B) "in accordance with the terms of any agreement," meaning that any lawful conditions that had to be met before the bonus would be paid were in fact met; and (C) "determinable," meaning that the dollar amount of the commission was capable of being calculated. *See* C.R.S. § 8-4-101(14)(a)(I) and (II).

58. "Employer," as defined under the CWA, includes the corporate entity for which an employee works as well as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); C.R.S. § 8-4-101(6) ("'Employer' has the same

9

meaning as set forth in the federal 'Fair Labor Standards Act of 1938,' 29 U.S.C. sec. 203(d)"); *see Inniss,* 385 F. Supp. 3d at 1167.

59. An individual is an "employer" under the CWA if they: (1) have the power to hire and fire; (2) supervise/control an employee's work; (3) determine wage rates and methods of payment; and (4) maintain employment records. *See id.*

60. Defendants Pinn and Gonsalves had the power to hire and fire Ms. Chernyakhovsky.

61. Defendants Pinn and Gonsalves hired Ms. Chernyakhovsky to HTH as the CEO.

62. Defendants Pinn and Gonsalves supervised and controlled Ms. Chernyakhovsky's work by assigning her day-to-day tasks to achieve HTH's strategic vision and the gyms it managed.

63. Defendants Pinn and Gonsalves determined Ms. Chernyakhovsky's wages.

64. Defendants Pinn and Gonsalves maintain employment records related to Ms. Chernyakhovsky's employment with HTH.

65. Employers who violate the CWA by failing to pay wages/compensation earned by an employee, and who continue to violate the Act by failing to "tender" such wages/compensation within 14 days of receiving a "written demand" are liable for either: (A) treble damages, if the employee is not able to show that the employer's wage violation was "willful;" or (B) quadruple damages, if the employee *is* able to show that the violation was willful. C.R.S. § 8-4-109(3)(a)-(b); *see Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶¶ 12-14 ("penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days"). A violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *See Mumby*, 636 F.3d at 1270.

66. Employers who violate the CWA are also liable for attorney's fees and costs incurred by the employee in obtaining their unpaid wages. C.R.S. § 8-4-110(1)(b); *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014) (CWA contains rebuttable presumption that prevailing employee is entitled to fees and costs).

67. In April 2023 and thereafter until February 2024, Ms. Chernyakhovsky was an "employee" subject to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

68. In April 2023 and thereafter until February 2024, Defendants were "employers" subject to the requirements and prohibitions of the CWA. *See* C.R.S. § 8-4-101(6); *Inniss*, 385 F. Supp. 3d at 1167.

69. Defendants violated the CWA by withholding and failing to pay wages and a bonus earned by Ms. Chernyakhovsky. *See* C.R.S. §§ 8-4-103, 8-4-105, and 8-4-109.

70. Defendants failed to pay Ms. Chernyakhovsky approximately $94,230.78.

71. Defendants further violated the CWA by failing to tender Ms. Chernyakhovsky's wages and bonus within 14 days of receiving her written demands. *See* C.R.S. § 8-4-109(3)(b); *see Garcia,* 2019 WL 1437766, at *4 (conditional offer of payment did not satisfy "tender" requirement).

72. Because Defendants knew or, through the exercise of reasonable diligence should have known, that their actions violated the CWA, their violations were willful as a matter of law. *See* C.R.S. §§ 8-4-109(3)(c); *Mumby*, 636 F.3d at 1270.

73. Because Defendants willfully violated the CWA, they are liable to Ms. Chernyakhovsky for all unpaid wages/compensation, mandatory penalties under C.R.S. § 8-4-109(3)(b)(I), additional penalties under C.R.S. § 8-4-109(3)(b)(II), and all reasonable attorney's

fees and costs incurred by Ms. Chernyakhovsky in obtaining his wages/compensation. *See* C.R.S. §§ 8-4-109(3), 8-4-110(1)(b).

**SECOND CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**Against BKB Queensbridge**

51.     Ms. Chernyakhovsky hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

52.     Ms. Chernyakhovsky and BKB Queensbridge entered into a contract wherein BKB Queensbridge promised Ms. Chernyakhovsky compensation in exchange for her consulting services.

53.     BKB Queensbridge has breached the agreement by failing to pay Ms. Chernyakhovsky approximately $41,566.50 plus interest in payments promised per the contract.

54.     According to the Consulting Contract, BKB Queensbridge is subject to interest for non-payment at a rate of 1.5% per week beginning 30 days after nonpayment.

55.     Because BKB Queensbridge breached its contract with Ms. Chernyakhovsky, BKB Queensbridge owes Ms. Chernyakhovsky approximately $71,080.45 plus interest as required by the contract.

56.     As a result of BKB Queensbridge's actions, Ms. Chernyakhovsky has suffered and continues to suffer damages.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**Against BKB Queensbridge**

57.     Ms. Chernyakhovsky hereby incorporates the allegations in each of the foregoing paragraphs as though fully set forth herein.

12

58. Ms. Chernyakhovsky rendered services to BKB Queensbridge which conferred a benefit upon BKB Queensbridge.

59. BKB Queensbridge understood and realized the benefit conferred.

60. BKB Queensbridge accepted the benefit under such circumstances that it would be inequitable for BKB Queensbridge to retain the benefit of withholding Ms. Chernyakhovsky's earned and owed payments, without payment of its value.

61. As a result of Defendants' actions, Ms. Chernyakhovsky has suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Chernyakhovsky respectfully asks that the Court enter judgment for her, and against Defendants, and award Ms. Chernyakhovsky:

A. Unpaid payments for Ms. Chernyakhovsky's consulting services plus contractual interest;

B. Unpaid wages/compensation in an amount to be determined at trial;

C. Mandatory penalties under C.R.S. § 8-4-109(3)(b)(I);

D. Additional penalties under C.R.S. § 8-4-109(3)(b)(II);

E. Interest on unpaid wages at a rate of 12% per annum;

F. Ms. Chernyakhovsky's reasonable attorneys' fees through the date of judgment;

G. Ms. Chernyakhovsky's costs through the date of judgment;

H. Post-judgment interest in an amount to be determined at trial; and

I. All other and further relief that the Court deems to be equitable and just.

## JURY DEMAND

Ms. Chernyakhovsky hereby demands a jury on all issues that are triable by jury.

Respectfully submitted on this 16th day of May, 2025.

        HKM EMPLOYMENT ATTORNEYS LLP

        By: */s/ Elizabeth Marasco*
        Jacqueline R. Guesno
        Elizabeth Marasco
        HKM Employment Attorneys LLP
        518 17th Street, Suite 1100
        Denver, Colorado 80202
        720-672-9750
        jguesno@hkm.com
        emarasco@hkm.com

        *Counsel for Plaintiff*